A. Wright, special J.,
delivered tbe opinion of the Court.
This was an action of' ejectment instituted in tbe Circuit Court of Obion county, in tbe year 1850, by tbe defendants in error, to recover of tbe widow and heirs of Richard T; Meriwether, a tract of land in said county. .Yerdict and judgment were rendered for tbe plaintiffs below, for tbe land claimed in tbe declaration, except seventy-three acres — a part of ' tbe tract — as to which tbe judgment was for tbe defendants. A motion for a new trial was made by tbe widow and heirs of Richard T. Meriwether and overruled — a bill of excep *302 tions filed, and they have appealed in error to this Court, and now ask for a reversal of the judgment.
The plaintiffs below claim under a grant from the State of Tennessee to McLemore and Yaulx for 640 acres of land, and have the older entry, survey and grant. The defendants claim to derive title under a grant from the State of Tennessee to "Wheaton & Tisdale for 2000 acres of land, founded on an entry in their name, dated the 26th of May, 1821, and both of these entries bear the same date, and are remarkably special.
The McLemore & Yaulx entry calls to begin on the bank of the Mississippi river, at the northwest corner f C. H. P. Marr’s 50 acre survey, running east with his line to his northeast corner — thence south with his east boundary 80 poles — thence east 360 poles — thence north, &c., for complement — bounding on said river on the west. The Wheaton .& Tisdale entry calls to begin on the bank of the Mississippi river, at the upper corner of Gr. W. L. Marr’s 320 acre survey, and the corner of C. H. P. Marr’s 50 acre survey — running east to the southeast corner of C. H. P. Marr’s said survey — thence north with his line to McLemore & Yaulx’s southwest corner of their 640 acre entry — thence east to their southeast corner — thence north to the south boundary of McLemore & Hopkin’s .1148 acre entry— thence east to their southeast corner — thence north with their line to J. Currin & Co.’s southwest corner — thence east with their line, &c., for complement, to join Edward Thursby’s north boundary.
The certificates of survey upon these two entries, and the grants are in precise conformity with their calls— *303 and upon tbe face of the papers there is no conflict; and it is most palpable that none was intended or supposed to exist — and that if the surveys had been made in accordance with the calls of the entries, none would have existed. But notwithstanding this is so, it is contended by the defendants in error, that the surveyor, in fact, when he came to survey the McLemore & Yaulx entry, instead of beginning • at the northwest corner of the C. H. P. Man* 50 acre entry, began at its southwest corner, and ran east and south so as to include a part of the Wheaton & Tisdale entry — and they claim that they are entitled to recover according to the actual survey under the McLemore & Yaulx entry — and there is great reason to believe, from the proof in the record, that the survey was made as they contend — and not only so, but that the Wheaton & Tisdale, and Thursby entries, and perhaps others adjoining, were also actually surveyed out of their places. On the other hand, the plaintiffs in error, while they deny the authority of the surveyor thus to depart from the calls of the entry — and in fact that he did so, insist that they are protected by the statute of limitations of this State.
Richard T. Meriwether, at a very early day, became the owner of the Gr. W. L. Marr 320 acre survey; and while the proof shows that he knew how these surveys had in fact been made, and how the lines had been run and marked; yet he further believed they were founded in mistake, and that the owners would be obliged to take possession and hold in conformity to their entries, certificates of survey and grants. That acting upon this assumption, and with a view, to a pur *304 chase of a part of the Wheaton & Tisdale grant, he, prior to the year 1836, had a line run and marked from the point fifty-six poles north of the southeast corner of the Marr 320 acre survey, east to the lake for the south boundary of the Wheaton & Tisdale grant, and the north boundary of the Thursby grant; this being the dividing line between these two grants according to the face of the papers. That on the 25th of May, 1836, he purchased of Searcy D. Sharp, who derived title from John L. Wheaton, one of the original grantees, a part of the Wheaton & Tisdale tract, at the price of $3170 00, and took ’ his deed in fee simple therefor. In this deed the part so purchased is described as follows: “ One certain tract, piece or parcel of land containing 634|- acres, situate, lying and being in the State of Tennessee, and county of Obion, in the 13th surveyor’s district, range 9, and section 8, in the Mississippi bottom, and near the Mississippi river, being 634f acres off the west end, and part of a tract of land granted by the State of Tennessee to Tisdale’s heirs and Wheaton, by grant No. 24891 — which said 634f- acres is the lot set apart by order of the Supreme Court, at Nashville, to John L. Wheaton out of said grant, and by him conveyed to the said Searcy D. Sharp, and is bounded as follows, to wit: On the west by Richard T. Meriwether’s 320 acre 'tract — on the north by McLemore & Yaulx’s 640 acre survey — on the east by a lot set apart to Tisdale’s hems — and on the south by Edward Thursby’s 1900 acre survey.”
The record shews that in the year 1834 the Whea-ton & Tisdale, grant had, by a decree of the Supreme Court at Nashville, been partitioned between the'owners, *305 and that the 634§ acres bad been laid off on the west end of the grant. This partition appears to have gone in conformity with what is' claimed by the defendants in error to have been the -actual survey of the grant as originally made, Richard T. Meriwether, disregarding the lines of the survey of the McLemore & Vaulx entry, as claimed to have been made by the defendants in error, claimed that under his purchase from Sharp he was entitled to his land in accordance with the boundaries, as shewn upon the face of the entries, certificates of survey and grants; and accordingly, immediately upon his purchase, took possession of the 6341-acres, fencing and enclosing a part of it within the limits of the land in dispute, and within the McLemore & Yaulx survey, as claimed by the defendants in error: and took and cut cord-wood along the whole north and east line of the Wheaton & Tisdale grant, as claimed by him, so far as the 634f acres extended. That on the 16th of Augpst, 1836, in order more clearly to define the boundaries of his land, he caused W. U. Watson, a deputy surveyor, to run off and mark his lines. The said Watson’s certificate of survey is as follows: “State of Tennessee, 13th district: I have surveyed for Richard T. Meriwether six hundred and thirty-four and one-half acres of land in range 9, and section 8 — beginning on an elm -and ash, marked X. V., the northeast corner of a tract in the name of 6r. W. L. Marr, for 320 acres, now belonging to the said Meriwether, on the south boundary line of the fifty acre tract in the name of C. H. P. Masr — running thence east 78 poles to a black-walnut bush, two persimmon trees marked for pointers — thence north sixty poles to a sycamore, *306 beecb and elm marked for the corner — thence east 230 poles to an ash and cypress marked as pointers — thence south 344 poles to an elm, hackberry and sycamore bushes marked as a corner, ash and cypress marked as pointers — thence west 808 poles to a cottonwood, Edward Thursby’s northwest corner — thence north, with the east boundary line of said 320 acre tract 284 poles, to the beginning. Surveyed this 16th day of August, A. IX, 1836. W. Ü. Watsob, D. S.,
For 13th District.”
Regarding this survey as furnishing the true boundaries of his land, Richard T. Meriwether continued his possession, which was adverse, claiming under his purchase from Sharp in accordance with the lines of this survey, until his death in 1840, leaving his widow and children in possession, which , they have continued to this day under a like claim of ownership. At his death many of his children were infants. The widow’s dower was not assigned her, and by some arrangement between her and the children, she has continued the possession and enjoyment of the property; some of the children living with her ever since the death of her husband. Richard T. Meriwether never claimed south of the line which he had run and marked between the grants of Wheaton & Tisdale, and Thursby — nor did his widow and children, until sometime after the institution of this suit, • when becoming alarmed lest it might be decided against them, they caused suit to be brought against one Larman, who held under the Thursby grant, for lands lying south of the line, and this suit has been decided in favor of Larman. It will, therefore, *307 be seen that Richard T. Meriwether and his widow and heirs have had a continued actual adverse possession of a part of the land in dispute from the time of his purchase of Sharp in 1836, till the commencement of this suit in 1850, holding under said purchase with the boundaries of Watson’s survey. Upon these facts we are of opinion their possession must, in law, be held to have been eo-extensive with the boundaries of this survey, and that the widow and heirs of Richard T. Meri-wether are protected to that extent by the act of 1819, ch. 28. It may be by the first section, certainly by the second section of the act. It is well settled that a case of naked possession, one holding as a trespasser, without excuse, unaccompanied by title, legal or equitable, valid or invalid, or by some kind of writing by which to determine the extent of the possession, must be restricted to the enclosures actually made. If this were not so, there would be' nothing to indicate the extent of the possession, and the wrong doer might claim without bounds or limits; Angelí, 75. But this doctrine can have no application to this case. In Brant vs. Ogden, 1 Johns R., 156, and Doe vs. Campbell, 10 do., 476, the rule is laid down, that adverse possession must be marked by definite boundaries. And this Court has repeatedly decided that an unregistered deed, a title bond, or an entry, though not surveyed, furnished evidence of the extent of possession; 6 Yerg., 448; 10 do., 83; 3 Sneed, 329; and in Chilton et als. vs. Wilson’s heirs, 9 Humph., 399, a certificate purporting to have been issued by the County Court of Cumberland county, Kentucky, in pursuance of the laws of that State, in which it was supposed the land lay, and *308 wbicb declared one Livingston under whom Wilson’s beirs claimed, entitled to tbe land in controversy, was, in connection with parol evidence, admissible as defining tbe 'extent of tbe defendant’s possession, tbougb inadmissible as independent evidence of title. Under these authorities, and upon tbe reason of tbe thing, we cannot doubt that tbe plaintiffs in error are protected to tbe extent above stated. Moreover, we cannot perceive why they may not call to then' aid tbe benefit of Wheaton & Tisdale’s entry and grant. They are tbe assignees of these grantees, and deduce their title from and in privity with them. Tbe grant and entry both, in their calls, define tbe boundary between it and tbe McLemore & Yaulx claim; and Richard T. Meri-wether and bis heirs held tbe 634f acres to this boundary, disregarding tbe actual survey as claimed by McLemore & Yaulx. Did they not bold under tbe Wheaton & Tisdale entry and grant? Suppose Whea-ton & Tisdale bad so held, would they not have been protected against tbe claim under McLemore & Yaulx’s actual survey? And are not plaintiffs in error in their shoes ? The question is not as to tbe effect of Sharp’s deed to Meriwether, because it calls to bound on tbe north ujmn McLemore & Yaulx’s survey. Rut tbe question is, did Richard T. Meriwether and bis beirs bold possession of tbe land in dispute as claimed by McLe-more and Yaulx ? and if they did tbe extent of that possession? And we have already shown they may resort to any paper or writing with wbicb they are connected, defining this. It is tbe possession of tbe plaintiffs in error that impairs tbe rights of McLemore '& Yaulx, if they were impaired at all.; and by that pos *309 session alone the defense of Meriwether’s heirs must he adjudged. But if this were not so, upon reading the proof in this record, we cannot doubt that Richafd T. Meriwether, being dissatisfied with Sharp’s first Meed, caused him, on the 16th of August, 1836, to execute to him a second deed for the 634f acres of land, in accordance with the calls of Watson’s survey; and that under it he held and claimed the land till his death. This deed is lost and cannot be produced; but sufficient and proper grounds were laid .to the Court for the introduction of secondary evidence as to the execution and contents of this deed, and such proof was given to the jury. W. Trice, who was an attesting witness to the deed, proves that he was one of the chain car riers when Watson made the survey, and that Sharp and - Meriwether were both present; and that Watson drew the deed and Sharp signed and executed it; he and Watson becoming witnesses to it. It is clear that the land surveyed by Watson was the land embraced in the deed. The words of the witness are: “We did sign the same as witnesses. Watson wrote it, (the deed,) and Sharp signed it, conveying the land to ’Meri-wether.” Watson is dead; but his evidence . as to this matter, given when alive on a former trial pf this cause, upon oath in Court, where he was open to examination by either party, is detailed at length by many witnesses, and is, if possible, more conclusive as to the existence and contents of this deed than is the evidence of Trice; and to our mind it is manifest that the very object of making this survey was the execution of this second deed, more to the views and purposes of the parties as to what was right. The fact *310 that no traces of this deed are found in the office of the clerk of the County Court, or in the register’s office, and other evidence contained in this record, of a character merely negative, cannot he allowed to impair or shake testimony so full and positive as that of Trice and Watson.
This being so, it is manifest that Richard T. Meri-wether’s widow and heirs are protected under the act of 1819, ch. 28, § 1, to the extent of Watson’s survey and that the possession of his heirs may be connected with his possession. ■ But they themselves, before the suit and after their father’s death, had the seven years possession required by the act; and having had in his. life-time possession under the proper deed and “ assurance ” of title, and they being in by descent under him, are equally protected. Hubbard & Wood vs. T. Wood’s lessee, 1 Sneed, 279.
And it cannot be necessary or material that either his widow or heirs should have had actual knowledge of the existence of this deed, or that Richard T. Meri-wether had taken it and held under it; nor that they should know that he held under any particular deed. In many cases it would be impossible to furnish proof of such knowledge, and to require it would defeat the protection the statute intended to give altogether. Title deeds may be lost or destroyed and may never come to the knowledge of the ancestor’s family, even if they be capable of understanding them, or of having any knowledge upon the subject. In this case, it is clear, that Richard T. Meriwether’s widow and heirs held and claimed this land because he had purchased it and paid for it; and we hold that the character and extent of *311 their possession will be adjudged by the nature of bis title papers and the extent of bis possession, whether they had actual knowledge of them or not. The parol gift of a slave to an infant, however young, though void in law, and though he may be utterly ignorant of it, will, nevertheless, in the hands of its father or guardian, vest it with a perfect title to the slave if it be held three years. In such a case, the gift, though void, determines the character of the possession; Love’s lessee vs. Shields, 8 Yerg., 405-407.
That the possession of Mrs. Meriwether here was not adverse to her children is most manifest. Besides, some one or more of the children always had a joint possession with her, and the possession was, in law, theirs, and inured to the benefit of all the co-heirs, and as to all the shares had the effect to bar the claim of McLemore & Vaulx. 1 Swan, 138.
It is objected that we have no evidence that this lost deed was a conveyance in fee simple. But we can understand the witnesses and transaction in no other sense; Meriwether’s purchase was in fee and so was his first deed; and the second deed was manifestly intended to carry out the same purchase with specific boundaries. The witnesses speak of it as a deed of conveyance, conveying the land to Meriwether, cand to suppose that the deed, under the circumstances, only conveyed a life-estate, would be at variance with the nature of the transaction and the entire case. Indeed we are unable to perceive how the contents of the deed could, under the circumstances of this case, be more fully established. This view being at variance with that taken by his Honor, the Circuit *312 Judge, in Ms charge to the jury, the judgment of the Court below is reversed, and the cause remanded for another trial.